UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH W. G.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:18-CV-05582-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific, legitimate reasons, supported by substantial evidence, to discount medical opinion evidence from Dr. Frances Carter, Ph.D., Dr. Terilee Wingate, Ph.D., and Dr. Tasmyn Bowes, M.D. Had the ALJ properly considered these medical opinions, the

residual functional capacity ("RFC") may have included additional limitations. The ALJ's error

is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of

42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further

proceedings consistent with this Order.

FACTUAL AND PROCEDURAL HISTORY

This case has a lengthy procedural history. On April 15, 2008, Plaintiff filed applications

for SSI and DIB. *See* Dkt. 9, Administrative Record ("AR") 14. Plaintiff alleges disability

beginning June 1, 2007. *See* AR 714. Plaintiff's applications were denied upon initial

administrative review and on reconsideration. *See* AR 14. ALJ Greg G. Kenyon held the first

hearing on March 26, 2010. AR 30-65. On April 21, 2010, ALJ Kenyon determined Plaintiff to

be not disabled. AR 11-26. After the Appeals Council denied Plaintiff's request for review of the

ALJ's decision, Plaintiff appealed ALJ Kenyon's decision to the United States District Court for

the Western District of Washington ("Court"), which reversed and remanded the decision. *See*

AR 1-6, 402-30.

On December 18, 2012, ALJ Robert P. Kingsley held the next hearing. AR 354-96. In a

decision dated March 11, 2013, ALJ Kingsley found Plaintiff to be not disabled. AR 677-700.

Plaintiff sought review of ALJ Kingsley's decision, which the Appeals Council accepted because

it found Plaintiff's DIB claim unadjudicated. *See* AR 308-09. On April 14, 2015, the Appeals

Council found Plaintiff not disabled. AR 701-09. Plaintiff appealed to this Court, which reversed

and remanded the matter on August 24, 2016. AR 823-44.

On June 13, 2017, ALJ S. Andrew Grace held the present hearing. AR 744-82. On March 21, 2018, the ALJ[1] determined Plaintiff to be not disabled. AR 710-43. The ALJ's March 21, 2018 decision is the final decision of the Commissioner.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to properly assess: (1) opinion evidence from Drs. Carter, Wingate, and Bowes, as well as opinions from Dr. Rebecca Jo Renn, M.D., Ms. Janet Brodsky, LICSW, Dr. Chris Yee, M.D., and Dr. Robert Hoskins, M.D.; (2) testimony from Plaintiff and two lay witnesses; and (3) the RFC and Step Five findings. Dkt. 13, pp. 2-19. Plaintiff requests, as a result of the ALJ's alleged errors, the Court remand his claims for an award of benefits. *Id.* at p. 19.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.      Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff maintains the ALJ failed to properly consider opinion evidence from Dr. Carter, Dr. Wingate, Dr. Bowes, Dr. Renn, Ms. Brodsky, Dr. Yee, and Dr. Hoskins. Dkt. 13, pp. 3-15.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referencing ALJ Grace and his March 21, 2018 decision.

physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

"Other medical source" testimony, which the Ninth Circuit treats as lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 512.

A. Dr. Carter

Plaintiff argues the ALJ failed to properly assess medical opinion evidence from examining physician, Dr. Carter. Dkt. 13, pp. 10-13.

Dr. Carter conducted a mental evaluation of Plaintiff on July 20, 2017. AR 1309-1317. Dr. Carter opined Plaintiff "will likely experience significant interruptions and impairment in any work setting that requires him to engage and work with others, but may be able to function in a setting that does not involve much interaction with others." AR 1314. Dr. Carter found Plaintiff's "ability to maintain regular attendance in the workplace is likely mildly to moderately impaired, depending upon the extent to which interaction with others is required." AR 1314. Likewise, Plaintiff's ability to complete a normal workday or workweek without interruptions

from his symptoms mildly to moderately impaired, as is his "ability to deal with the usual stress encountered in the workplace," depending upon the extent to which interaction with others is required. AR 1314. Similarly, Dr. Carter opined Plaintiff has moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers AR 1316. Lastly, Dr. Carter found Plaintiff markedly impaired in his ability to respond appropriately to usual work situations and changes in a routine work setting. AR 1316.

The ALJ summarized Dr. Carter's opinion and assigned it "partial weight." AR 729. The ALJ found the RFC limited Plaintiff's social interactions in the workplace and the amount of decisions or changes to be made in the workplace. AR 729. However, "Dr. Carter's opinions concerning [Plaintiff's] marked limitation to respond appropriately to usual work situations and to changes in a routine work setting, while accommodated somewhat in the [RFC], are not consistent with the objection medical evidence." AR 729. The ALJ reasoned:

> The claimant reported, after the alleged onset date, attending a business class and preparing to start his own business on multiple occasions, had no difficulty expressing himself in numerous treatment encounters, and reported himself almost totally independent in his activities of daily living within a very recent clinical setting.

AR 729 (citations omitted).

An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may also discount a physician's findings if those findings appear inconsistent with a plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But an ALJ cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)); *Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, *even when the objective factors are listed seriatim*. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey,* 849 F.2d at 421 (emphasis added).

In this case, the ALJ failed to explain how any of the activities reported by the Plaintiff undermine Dr. Carter's opinion. *See* AR 729. For example, the ALJ did not explain how Plaintiff "attending a business class and preparing to start his own business" undermine Dr. Carter's opinion that Plaintiff is markedly limited in his ability to respond to usual work situations and changes in a work setting. *See* AR 729. The ALJ likewise failed to explain how Plaintiff's ability to express himself in treatment encounters or be independent in his daily activities undermine Dr. Carter's opined marked limitations. *See* AR 729. The ALJ "merely states" these facts "point toward an adverse conclusion" yet "makes no effort to relate any of these" facts to "the specific medical opinions and findings he rejects." *Embrey,* 849 F.2d at 421. Thus, the ALJ failed to provide a specific, legitimate reason, to discount the weight assigned to Dr. Carter's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Due to the ALJ's conclusory reasoning, the Court finds the ALJ failed to provide any specific, legitimate reason, supported by substantial evidence in the record, to discount Dr. Carter's opinion. Accordingly, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The Ninth

Circuit has held "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Here, had the ALJ properly considered Dr. Carter's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have contained additional limitations. Specifically, the hypothetical questions posed to the VE and RFC may have contained greater restrictions on Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. Because the ultimate disability determination may have changed with proper consideration of Dr. Carter's opinion, the ALJ's error is not harmless and requires reversal. The ALJ shall reconsider Dr. Carter's opinion on remand.

B.  Dr. Wingate

Plaintiff asserts the ALJ failed to provide any specific, legitimate reason to discount medical opinion evidence from examining physician, Dr. Wingate. Dkt. 13, pp. 4-5.

On July 6, 2010, Dr. Wingate performed a psychological evaluation on Plaintiff. AR 495-508. Dr. Wingate's evaluation included a record review, a review with Plaintiff of his psychiatric history, a mental status examination ("MSE"), and other psychological tests. *See* AR 495-508. Dr. Wingate opined Plaintiff has moderate limitations in his ability to learn new tasks, exercise judgment and make decisions, perform routine tasks, and relate appropriately to co-workers and supervisors. AR 501. Dr. Wingate found Plaintiff markedly limited in his ability to interact

appropriately with public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. AR 501. Dr. Wingate determined Plaintiff's "[p]rognosis is poor." AR 502. She noted that while Plaintiff "has been actively involved in mental health treatment," he "doesn't respond to medications and there are strong characterological issues to be addressed in therapy. This can take years." AR 502.

The ALJ accorded "partial weight" to Dr. Wingate's opinion, finding the marked limitations "not supported by the objective medical evidence." AR 731. In particular, the ALJ discounted the marked limitations because:

> (1) During this period, the claimant was not taking his prescription stimulant, and within months of this evaluation, reported a striking improvement in his daytime fatigue with the help of his prescription stimulant, (2) and was advised by a care provider in May of 2010 that he had a "good medical work-up" and was encouraged by this care provider to seek out work and be active. (3) Further, Dr. Wingate observed the claimant was cooperating with a treatment plan, but broadly speaking, the claimant was not compliant at this time with sleep hygiene. (4) Further, many of the issues in 2010 were situational, such as the death of his pet bird, ongoing financial difficulties, job dissatisfaction, and being passed over for a promotion he was hoping for, and therefore separate and distinct from the symptoms of the claimant's medically determinable impairments. (5) Dr. Wingate also incorporated the effects of the claimant's narcolepsy when reaching these conclusions, but the claimant at this time was not compliant with sleep hygiene.

AR 731 (citations omitted) (numbering added).

First, the ALJ discounted the weight he gave to Dr. Wingate's opinion because Plaintiff was not taking a prescription stimulant at the time of the evaluation, and within months of the evaluation, reported improvement in daytime fatigue with the help of a prescription stimulant. AR 731 (citing AR 619). Impairments that can be controlled with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). Here, to support his finding, the ALJ cited a treatment note from March 30, 2011, in which Dr.

Theodore Elliot Bushnell, M.D., saw Plaintiff for a follow-up appointment for narcolepsy and sleep apnea after Plaintiff restarted the medication Provigil to treat these conditions. *See* AR 619. While the ALJ noted that this treatment note reflects Plaintiff reported improvement in daytime fatigue on this medication, the ALJ failed to connect that finding to any particular part of Dr. Wingate's opinion. *See* AR 731. For instance, the ALJ did not explain how Plaintiff's improvement in daytime fatigue undermines Dr. Wingate's opinion that Plaintiff has marked limitations in his ability to interact appropriately with the public or maintain appropriate behavior in a work setting. *See* AR 501, 731.

Additionally, as explained in further detail below, Dr. Wingate wrote that he opined to Plaintiff's marked limitations for multiple reasons, including his mood swings, anxiety, and stress tolerance. *See* AR 501. Given that the record indicates Dr. Wingate opined to the marked limitations for reasons in addition to Plaintiff's fatigue and narcolepsy, Plaintiff's subsequent improvement in daytime fatigue does not necessarily undermine Dr. Wingate's opinion. Therefore, the ALJ's first reason for rejecting Dr. Wingate's opinion is not sufficiently specific nor supported by substantial evidence in the record.

Second, the ALJ discounted Dr. Wingate's opinion because one month prior to Dr. Wingate's evaluation, a medical provider told Plaintiff he had a "good medical work-up" and encouraged him to seek out work and be active. AR 731. Yet the ALJ again failed to provide any rationale as to how this other provider's opinion undermines Dr. Wingate's opinion. *See* AR 731. In addition to lacking adequate specificity, the ALJ failed to explain why he found the treatment note more persuasive than Dr. Wingate's objective tests and opinions about Plaintiff. *See Garrison*, 759 F.3d at 1012-13 ("An ALJ errs when he rejects a medical opinion or assigns it little weight while . . . asserting without explanation that another medical opinion is more

persuasive."). Hence, the ALJ's conclusory statement about one treatment note is insufficient to reject Dr. Wingate's opined marked limitations. *See id.*; *see also Reddick*, 157 F.3d at 725 (an ALJ can provide specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

In the ALJ's third and fifth reasons for discounting Dr. Wingate's opinion, the ALJ remarked that Plaintiff was not compliant with sleep hygiene at the time of Dr. Wingate's evaluation and Dr. Wingate "incorporated the effects of [Plaintiff's] narcolepsy when reaching these conclusions." AR 731. Though he failed to state it directly, the ALJ's reasoning suggests he believed Dr. Wingate would have found Plaintiff less limited had Plaintiff been compliant with sleep hygiene at the time of the evaluation. Notably, Dr. Wingate wrote that he opined to the marked limitations based on several observations of Plaintiff, including that Plaintiff "withdraws from stressful situations" and has "significant mood swings and anxiety," "poor" stress tolerance, and "depressive episodes." AR 501. Dr. Wingate only wrote Plaintiff's narcolepsy contributed to his marked limitation in the ability to maintain appropriate behavior in a work setting. *See* AR 501. But Dr. Wingate observed this limitation also stems from Plaintiff's depressive episodes and anxiety. *See* AR 501.

As the ALJ's conclusions about sleep hygiene overlook that Dr. Wingate opined to the marked limitations for multiple reasons, the Court finds the third and fifth reasons for discounting this opinion not supported by substantial evidence in the record. *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the . . . reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Finally, in the fourth reason for discounting Dr. Wingate's opinion, the ALJ wrote that many of Plaintiff's "issues in 2010 were situational . . . and therefore separate and distinct from the symptoms of [his] medically determinable impairments." AR 731 (citation omitted). To support this proposition, the ALJ cited one mental health treatment note from therapist Ms. Emily Mould, MLT, from March 18, 2010. AR 259. Ms. Mould wrote the treatment session was "focused initially on multiple stressors, including death of pet bird, ongoing financial difficulties that nearly resulted in eviction from apartment, job dissatisfaction . . . and upcoming disability hearing." AR 259. However, the record indicates Plaintiff continued to experience mental health symptoms even after his situational stressors subsided. On September 2, 2010, Ms. Mould wrote in a treatment note that despite "improvements since last session" in Plaintiff's living situation and friendships, he was "primarily focused on negative aspects of all situations and expresses hopeless/helpless anticipation that the few positive gains he's made will not last." AR 1189 Ms. Mould noted Plaintiff "was mildly distressed [and] tearful." AR 1188.

On September 3, 2010, testing revealed Plaintiff to have "severe psychiatric symptoms." AR 1186. The treatment note accompanying this finding did not indicate the finding was based on situational stressors. *See* AR 1185-86. To the contrary, the treatment note describes Plaintiff's personal history and found Plaintiff "stuck in a depressive cycle of not striving." AR 1186. On September 28, 2010, Ms. Mould again noted Plaintiff "seems to have made progress in stabilizing living situation, although he continues to remain focused on negative aspects of all situations[.]" AR 1193. She observed Plaintiff's "affect was less labile," and he was "less agitated/irritable," despite "expressing very distressed feelings." AR 1193. The record further shows Plaintiff's mental health symptoms were present after 2010. *See, e.g.*, AR 562 (on June 23, 2011, Plaintiff presented "very anxious," "talked excessively," and "looked severely

depressed"); AR 573-74 (on August 17, 2011, Plaintiff reported "worse" depression; MSE revealed excessive speech, and anxious and depressed mood); AR 584 (on September 21, 2011, MSE showed Plaintiff had "excessive" speech, "agitated" behavior, "hyperactive" psychomotor behaviors, and "anxious and depressed" mood); AR 1288 (on May 6, 2013, MSE revealed "excessive" speech, "expansive" affect, and "anxious" mood).

Moreover, Dr. Wingate did not state she based her opinion on Plaintiff's situational stressors. Rather, Dr. Wingate performed various psychological tests, including an MSE, and wrote she based her opined limitations on her observations. *See* AR 501; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (MSEs "are objective measures"). Because the record shows Plaintiff experienced mental health symptoms after 2010 and Dr. Wingate based her opinion on her objective observations of Plaintiff, discounting her opinion because "the issues in 2010 were situational" is not legitimate and lacks support from substantial evidence in the record. *See Aguilar v. Soc. Sec. Admin.*, 356 F. Supp. 3d 1141, 1147 (D. Colo. 2018) ("To the extent the ALJ means to say that [the claimant's] anxiety and panic attacks would be less frequent . . . in the absence of situational stressors, the Court has been directed to no support in the record for such a conclusion."); *see also Rought v. Berryhill*, 2017 WL 4803917, at *8 (W.D. Wash. Oct. 25, 2017) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999)) (ALJ erred in finding physician's opinion unsupported by treatment notes about situational stressors, as the ALJ sought "to supplant his own lay opinion for [the physician's] medical opinion, [which was] based on [an MSE] as well as a review of the medical records.").

For the above stated reasons, the ALJ's five reasons for discounting Dr. Wingate's opinion were not specific and legitimate nor supported by substantial evidence. Had the ALJ properly considered Dr. Wingate's opinion, the RFC and hypothetical questions posed to the VE

may have contained additional limitations. These items may have indicated, for instance, that Plaintiff is markedly limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115. The ALJ is instructed to reassess Dr. Wingate's opinion on remand.

## C. Dr. Bowes

Plaintiff maintains the ALJ failed to provide specific, legitimate reasons to discount three medical opinions from Dr. Bowes. Dkt. 13, pp. 7-10.

### 1. *July 28, 2011 and October 31, 2012 Evaluations*

Dr. Bowes performed her first psychological evaluation of Plaintiff on July 28, 2011. *See* AR 535-45. Dr. Bowes interviewed Plaintiff on his medical and personal history and conducted an MSE and other psychological tests, including trail making exercises. *See* AR 535-45. Dr. Bowes opined Plaintiff's irritability has a "mid-moderate" impact on his work activities, hallucinations/disturbing dreams have a moderate impact on his work activities, and depression, somatic symptoms, and anxiety have marked impacts on his work activities. AR 537-38. Dr. Bowes determined Plaintiff's sleep disturbances severely impact his work activities AR 538.

Dr. Bowes opined Plaintiff has moderate limitations in multiple functional areas, including the ability to learn new tasks and perform routine tasks without supervision. AR 539. Dr. Bowes also determined Plaintiff has marked limitations in three areas: the ability to communicate and perform effectively in a work setting with public contact; the ability to communicate and perform effectively in a work setting with limited public contact; and the ability to maintain appropriate behavior in a work setting. AR 539. Dr. Bowes wrote she opined

1  Plaintiff would be markedly impaired in the ability to maintain appropriate behavior in a work

2  setting in part because he would have "many absences." AR 539.

3      On October 31, 2012, Dr. Bowes conducted her second psychological evaluation of

4  Plaintiff. AR 648-60. Dr. Bowes performed a clinical interview, an MSE, trail making exercises,

5  and other psychological tests. AR 648-60. Dr. Bowes determined Plaintiff's depression, anxiety,

6  conversion, and sleep disorder affect his ability to work. AR 650. Dr. Bowes opined Plaintiff has

7  moderate limitations in the ability to communicate and perform effectively in a work setting,

8  maintain appropriate behavior in a work setting, and understand, remember, and persist in tasks

9  by following detailed instructions. AR 651. Further, Dr. Bowes found Plaintiff markedly

10  impaired in two areas of basic work activities: the ability to perform activities within a schedule,

11  maintain regular attendance, and be punctual within customary tolerances without special

12  supervision; and the ability to complete a normal workday and workweek without interruptions

13  from psychologically based symptoms. AR 651.

14      The ALJ discussed Dr. Bowes' July 28, 2011 and October 31, 2012 evaluations together

15  and gave them "partial weight." *See* AR 730. The ALJ found Dr. Bowes' opined moderate

16  limitations "consistent with the objective medical evidence and the [RFC]." AR 730. Yet the

17  ALJ found Dr. Bowes' opined marked limitations "not consistent with the evidence of record"

18  for three reasons:

19          (1) During this period, the claimant was keeping busy, and reporting improvement
            with psychological counseling and treatment. (2) While the claimant underwent
20          limited psychological treatment in 2012, Dr. Bowes noted the claimant's
            condition was typically treatable with follow through in her July of 2011
21          evaluation. (3) Further, the above [RFC] addresses many of the issues noted here,
            such as social interaction, workplace stressors, and overexertion.
22

    *See* AR 730 (citations omitted) (numbering added).
23

24

First, the ALJ discounted Dr. Bowes' opinions because Plaintiff "was keeping busy" and "reporting improvement" during this period. AR 730 (citations omitted). An ALJ can discount a medical opinion if there are inconsistencies between that opinion and contemporaneous treatment records. *Parent v. Astrue*, 521 Fed. Appx. 604, 608 (9th Cir. 2013) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 20008)). However, in this case, the ALJ's reasoning is conclusory. Though the ALJ cited three treatment notes to support this finding, he failed to explain how any of the referenced factors undermine Dr. Bowes' opinions. *See* AR 730. The ALJ did not, for example, explain how Plaintiff "keeping busy" and reporting "improvement" contradict Dr. Bowe's opinion about Plaintiff's marked limitation in the ability to maintain appropriate behavior in a work setting or complete a normal workday and workweek without interruptions from psychologically based symptoms. Because the ALJ failed to provide his interpretation of the evidence, his first reason for discounting Dr. Bowes' opinions is insufficient. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Second, the ALJ rejected Dr. Bowes' opinions because "[w]hile the claimant underwent limited psychological treatment in 2012, Dr. Bowes noted the claimant's condition was typically treatable with follow through in her July of 2011 evaluation." AR 730. Nonetheless, the ALJ failed to explain how Plaintiff's "limited" treatment and Dr. Bowes' remark that Plaintiff's condition was "treatable" undermine Dr. Bowes' opinions. Moreover, to the extent the ALJ intended to reject Dr. Bowes' opinions because of Plaintiff's "limited psychological treatment," the Ninth Circuit has held "the fact that [the] claimant . . . did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's]

assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465. This is because

those afflicted with depression "often do not recognize that their condition reflects a potentially

serious mental illness." *Id.* (citation omitted); *see also Blankenship v. Bowen*, 874 F.2d 1116,

1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for

the exercise of poor judgment in seeking rehabilitation"). Accordingly, the ALJ's second reason

for discounting these opinions from Dr. Bowes is not specific and legitimate. *See Blakes v.

Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an

accurate and logical bridge from the evidence to [his] conclusions so that we may afford the

claimant meaningful review of the SSA's ultimate findings.").

Third, the ALJ stated the RFC addresses many of the issues Dr. Bowes noted, including

"social interaction, workplace stressors, and overexertion." AR 730. While the ALJ previously

stated he found the moderate limitations consistent with the RFC, he failed to explain whether –

and if so, how – he intended to account for the marked limitations in the RFC or hypothetical

questions posed to the VE. *See* AR 731. The Court's review of the record indicates these items

do not contain Dr. Bowes' opined marked limitations, as the marked limitations provide greater

restrictions on Plaintiff's abilities than reflected in the RFC and hypothetical questions posed to

the VE. *Compare, e.g.*, AR 720-21 (RFC) *with* AR 651 (Dr. Bowes' opinion that Plaintiff has

marked limitations in the ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms). Because the ALJ's conclusory statement

lacks any supporting explanation, it is not specific and legitimate.

As all three of the ALJ's reasons for rejecting Dr. Bowes' July 28, 2011 and October 31,

2012 opinions contain error, the Court finds the ALJ failed to properly consider these opinions.

The RFC and hypothetical questions posed to the VE may have contained greater limitations

with proper consideration of these opinions from Dr. Bowes. Hence, the ALJ's errors were not harmless. The ALJ is directed to re-evaluate Dr. Bowes' July 28, 2011 and October 31, 2012 opinions on remand.

    2. *October 1, 2014 Evaluation*

    Dr. Bowes completed her third psychological evaluation of Plaintiff on October 1, 2014. *See* AR 1076-88. The ALJ provided distinct reasons for giving only partial weight to this opinion. *See* AR 730-31. Because the ALJ's reconsideration of Dr. Bowes' July 28, 2011 and October 31, 2012 opinions may impact the ALJ's assessment of this later opinion, the Court directs the ALJ to re-evaluate Dr. Bowes' October 1, 2014 opinion on remand, as necessitated by his reconsideration of Dr. Bowes' earlier opinions.

    D.  <u>Dr. Renn and Ms. Brodsky</u>

    Plaintiff asserts the ALJ failed to properly consider the opinion evidence from Dr. Renn and Ms. Brodsky. Dkt. 13, pp. 3-4, 7-10, 12-13, 15. These sources rendered opinions on Plaintiff's mental impairments and associated limitations. The Court has determined remand is inevitable and has instructed the ALJ to re-evaluate medical opinion evidence on Plaintiff's mental impairments from Drs. Carter, Wingate, and Bowes. Therefore, the ALJ is directed to reassess the opinion evidence from Dr. Renn and Ms. Brodsky on remand, as necessitated by his reconsideration of the evidence from Drs. Carter, Wingate, and Bowes.

    E.  <u>Dr. Yee</u>

    Plaintiff challenges the weight the ALJ assigned to a medical opinion rendered by Dr. Yee on Plaintiff's physical condition. Dkt. 13, pp. 5-7.

    Dr. Yee is one of Plaintiff's treating physicians. *See, e.g.*, AR 546-60, 1267-72 (treatment notes). On May 17, 2011, Dr. Yee issued a functional assessment on Plaintiff's physical

condition. AR 533-34. Dr. Yee opined Plaintiff is able to stand for one hour, and sit for two hours, in an eight-hour workday. AR 533. Dr. Yee determined Plaintiff is able to lift ten pounds occasionally and frequently. AR 533. Further, Dr. Yee opined Plaintiff is limited in his ability to stoop, crawl, and kneel, and use fine motor skills due to "numbness with repetitive motions." AR 534. Finally, Dr. Yee found Plaintiff has environmental restrictions with respect to "fluorescent lights" and "noises." AR 534.

The ALJ assigned "limited weight" to Dr. Yee's opinion because:

(1) First, this severity is not at all consistent with the objective medical evidence, revealing a claimant who after the amended, alleged onset date, demonstrated normal strength and sensation in all assessed extremities, as well as normal gait. (2) Further, during this period the claimant reported walking and biking. (3) Finally, Dr. Yee's opinions are inconsistent with those of other acceptable medical sources in this matter.

AR 733 (citations omitted) (numbering added).

First, the ALJ discounted Dr. Yee's opinion because it is not consistent with the objective medical evidence, which shows normal strength and sensation in all assessed extremities and normal gait. AR 733 (citing 201, 218, 232, 550, 652). An ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Here, the records the ALJ cited show Plaintiff had – as the ALJ stated – "normal strength and sensation in all assessed extremities, as well as normal gait" after the alleged onset date of disability. *See* AR 201 (normal gait, normal tandem walk, normal heel-toe walk), AR 218 (though Plaintiff "has had past numbness in his extremities," he "does not currently describe any difficulty with balance, coordination, or strength"), AR 232 (physical examination showed "normal bulk and tone in all extremities. Sensory examination is intact. . . . gait is normal"), AR 550 ("[b]alance and gait intact"), AR 652 ("[g]ait was normal, with upright posture"). As the ALJ found, these records are not consistent

with the "severity" of Dr. Yee's opinion, *i.e.*, that Plaintiff can stand for one hour and sit for two hours in an eight-hour workday, and can lift ten pounds. Accordingly, the ALJ's finding that the severity of Dr. Yee's opinion is not consistent with the objective medical evidence is specific and legitimate and supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1216 (upholding an ALJ's rejection of a physician's opinion for being contradictory where the physician's "other recorded observations and opinions" contradicted his opinion about the claimant's physical abilities).

Plaintiff argues Dr. Yee's opinion is consistent with Dr. Yee's "overall clinical findings[.]" Dkt. 13, p. 6 (citing AR 533-34, 548, 551, 560, 578, 590, 1271, 1290, 1292). But the findings cited by Plaintiff – showing, for example, diagnoses of asthma, chronic right ankle pain, backache, and sleep apnea – fail to support the severity of Dr. Yee's opined limitations. The Court's review of the record also does not reveal objective findings supporting the severity of Dr. Yee's opinion. Therefore, Plaintiff's argument is unpersuasive. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citation omitted) ("If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld).

Further, while the ALJ provided two other reasons to discount Dr. Yee's opinion, the Court declines to consider whether these remaining reasons contained error, as any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle*, 533 F.3d at 1162) (noting that although an ALJ erred regarding one reason he gave to discount a medical opinion, "this error was harmless because the reason gave a reason supported by the record" to discount the opinion). The ALJ need not provide a new assessment of Dr. Yee's opinion on remand.

1      F.   Dr. Hoskins

2          Plaintiff objects to the weight the ALJ assigned to the opinion of non-examining

3   physician Dr. Hoskins, who reviewed and affirmed an opinion from medical consultant Mr.

4   Wayne Rhodes. Dkt. 13, p. 15.

5          On June 25, 2008, Mr. Rhodes rendered an opinion on Plaintiff's physical RFC

6   assessment. AR 207-14. Mr. Rhodes opined Plaintiff can occasionally lift 20 pounds, frequently

7   lift 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6

8   hours in an 8-hour workday, and push and/or pull an unlimited amount. AR 208. Mr. Hoskins

9   also found Plaintiff "limited" in his ability to handle. AR 210. On October 30, 2008, Dr. Hoskins

10  "noted the data on this file" and reviewed and affirmed Mr. Rhodes' opinion. *See* AR 215.

11         The ALJ assigned "partial weight" to Dr. Hoskins' opinion, finding "the objective

12  medical evidence supports greater limits." AR 729. However, the ALJ rejected the opinion on

13  "limited" handling, finding it "too vague to be of probative value." AR 729. As stated above, an

14  ALJ may reject an opinion that is "brief [or] conclusory[.]" *Bayliss*, 427 F.3d at 1216 (citation

15  omitted). In this case, the opinion that Plaintiff has "limited" handling ability contains no

16  supporting explanation as to how or why Plaintiff is "limited" in his ability to handle. *See* AR

17  210, 215. While Mr. Rhodes noted in another section of the report that Plaintiff has "mild

18  bilateral carpal tunnel syndrome" and wears hand and elbow braces, neither he nor Dr. Hoskins

19  connected these notes to Plaintiff's limited ability to handle. *See* AR 214, 215. As the ALJ's

20  finding that this opinion is "too vague to be of probative value" is supported by substantial

21  evidence, this is a specific, legitimate reason to reject the opinion as to Plaintiff's limited

22  handling ability.

23

24

1    Plaintiff argues the ALJ "repeats the previous ALJ's error of failing to acknowledge that

2   the opinion cited by the ALJ" is actually the opinion of Mr. Rhodes. Dkt. 13, p. 15. Contrary to

3   Plaintiff's argument, the Court in its last decision found the previous ALJ erred when he

4   incorrectly referred to Dr. Hoskins as "Dr. Gaffield." *See* AR 838. The ALJ provided a new

5   assessment of Dr. Hoskins' opinion on remand and did not refer to Dr. Hoskins' by the incorrect

6   name. *Compare* AR 690-91 *with* AR 729. As Plaintiff has not shown harmful error in the ALJ's

7   consideration of Dr. Hoskins' opinion, the ALJ need not provide a new assessment of Dr.

8   Hoskins' opinion on remand. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The

9   burden is on the party claiming error to demonstrate not only the error, but also that it affected

10  his substantial rights.'")

### II.    Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony and the lay witness testimony.

Plaintiff alleges the ALJ failed to provide legally sufficient reasons to discount the weight given to Plaintiff's testimony and lay witness testimony from Susie Seip and Gary Ohlinger. Dkt. 13, pp. 15-18. The Court has directed the ALJ to reassess opinions from Dr. Carter, Dr. Wingate, Dr. Bowes, Dr. Renn, and Ms. Brodsky on remand. *See* Section I., *supra*. Because Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of the medical evidence may impact his assessment of Plaintiff's subjective testimony and the lay witness opinions, the ALJ shall reconsider Plaintiff's subjective symptom testimony and the testimony from Ms. Seip and Mr. Ohlinger on remand.

### III.   Whether the RFC and Step Five findings are supported by substantial evidence.

Plaintiff maintains the RFC and Step Five findings are not supported by substantial evidence. Dkt. 13, pp. 18-19.

The Court has found the ALJ committed harmful error and has directed the ALJ to reassess medical opinion evidence, Plaintiff's subjective symptom testimony, and lay witness testimony on remand. *See* Sections I.-II., *supra*. Hence, the ALJ shall reassess the RFC on remand. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two physicians' findings).

**IV.    Whether this case should be remanded for an award of benefits.**

Plaintiff requests the Court remand this case for an award of benefits. Dkt. 13, p. 19.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error and has directed the ALJ to re-evaluate opinion evidence from Dr. Carter, Dr. Wingate, Dr. Bowes, Dr. Renn, and Ms. Brodsky; Plaintiff's subjective symptom testimony; the lay witness testimony; the RFC; and the Step Five findings on remand. Because outstanding issues remain regarding the medical evidence, Plaintiff's testimony, lay witness testimony, the RFC, and Plaintiff's ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

<u>CONCLUSION</u>

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 11th day of April, 2019.

David W. Christel
United States Magistrate Judge